# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ANDREW U. D. STRAW**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14 C 1420 |
| | ) |
| **JOHN F. KLOECKER**, and | ) |
| **LOCKE LORD LLP**, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Andrew Straw ("Straw") has a penchant for shooting from the hip -- and most recently, for coupling his irresponsibility in that respect with a set of scurrilous (and totally groundless) personal insults to this Court. This Court will of course leave the determination of any possible appropriate sanctions for Straw's misconduct to others who have had occasion to deal with him on more than one occasion (perhaps the Executive Committee of this District Court), as this Court has not. But this memorandum opinion and order regrettably finds it necessary to recount, in some detail, portions of Straw's history before this Court in this litigation.

Straw began this litigation because he took offense at attorney John Kloecker ("Kloecker") and Kloecker's law firm Locke Lord LLP for having the effrontery to serve as counsel for their client Paddock Publications ("Paddock"), whom Straw was suing in another action.[1] Straw's reaction to that "effrontery" took the form of filing a federal complaint -- one

---

[1] Because Straw's lawsuit against Paddock was not brought before this Court, it expresses no view as to the merits of (or the lack of merit in) that action.

purportedly sounding in civil RICO (a subject as to which Straw has since acknowledged that he displayed real ignorance in doing so -- yet that ignorance did not deter him from seeking $15 million in damages for his ill-considered RICO claim). Straw's ill-founded RICO lawsuit was assigned to this Court's calendar, and even a threshold analysis revealed that Straw's effort was so patently bogus that this Court quickly issued a March 5, 2014 memorandum opinion and order that this Court later (on August 4 of this year) has quoted in relevant part. Accordingly a copy of that August 4 memorandum order is attached as Ex. 1 to this opinion.[2]

But the emptiness of Straw's RICO claim, which both this Court and our Court of Appeals held to be frivolous in the legal sense (more detail on this a bit later), did not deter Straw. In July of this year he tried to get out from under that twofold determination of his legal frivolousness by moving for that judicial characterization to be stricken. According to Straw, his goal in trying to purge himself of the "frivolous" adjective was to undo his suspension from the practice of law, notably in the State of Indiana. But this Court's original March 5, 2014 opinion, as quoted in Ex. 1 (a quotation that should be read), exposed the total bankruptcy of that effort, and as stated earlier our Court of Appeals reinforced this Court's rejection in even more forceful terms (again the quotation of those terms in Ex. 1 should be read).

Nothing daunted, a bit more than three weeks ago (on September 11 of this year) Straw filed a "Verified Motion for Permission To Amend and To Request the Case Be Reopened" (the "Sept. 11 Motion," Dkt. No. 32) that attempted to call Fed. R. Civ. P. ("Rule") 60(b) to his aid. As the only judge who had dealt with Straw's continued intransigence in this case, and without

_____
[2] As will be seen later, part of the content of the August 4 memorandum order bears direct citation and quotation in this opinion, rather than its being recast or paraphrased.

any knowledge of the entry of a September 13 Executive Committee order that had inappropriately reassigned this already closed case to this Court's colleague Honorable Manish Shah, this Court promptly denied that Sept. 11 Motion in a brief September 20 memorandum order.

This Court would not of course have expected Straw, whose ignorance and disregard of other federal rules and procedures has been exhibited in other respects, to have had a prior understanding of the glitch in the Executive Committee's August 28 order (the one whose sole substantive function was to identify the necessary redistribution of the bulk -- but not all -- of the pending cases on this Court's calendar through a customary computer-generated random assignment system[3]) in mistakenly referring to this Court's "retirement" to be effective September 1.  Hence Straw cannot be faulted for trying to recast his dismissed RICO complaint via the Sept. 11 Motion (although, as will be seen, the proposed recast complaint was also federally bizarre on its own).  But the numerous steps that Straw has sought to take since he learned about the correction of that glitch by the Executive Committee's September 21 order (Dkt. No. 35, Ex. 2 to this opinion) -- knowledge that came to Straw either that day or a day or two thereafter -- are frankly inexcusable.  This opinion will accordingly continue with that subject.

At the outset of that discussion it should again be made clear -- although it is hardly necessary to state -- that this Court ascribes no fault to a lawyer who seeks to cure a flawed complaint by correcting the errors made the first time around.  Where the original error is so

---

[3] See attached Appendix.

fundamental as Straw's was here, though, it is only reasonable to expect that his second effort would show more reasoned thought than Straw has devoted to the Sept. 11 Motion and to the proposed pleadings that Straw has since tendered, which shift gears from his original bizarre civil RICO theory to a difficult-to-comprehend contention that Kloecker and his law firm somehow ran afoul of the Americans with Disabilities Act's Title II by Kloecker having written a letter in February 2014 in the course of representing Paddock -- as Paragraph 7 of Straw's "Verified First Amended Complaint" (Dkt. No. 36, filed Sept. 22) explained:

> This letter from Mr. Kloecker came in response to the state defamation and Illinois Human Rights Act lawsuit Straw filed against Paddock Publications. (Exhibit A)

Some further notion of the more-than-dubious credentials of Straw as a federal lawyer is conveyed by the same Complaint's ¶¶ 9 and 10:

> 9. Straw filed that state case because he was experiencing retaliation against his work attempting to address the lack of handicap spaces by Title II and Title III entities in the Streamwood, Illinois, environs.
>
> 10. Straw did not win his lawsuit on appeal, but he is suing the State of Illinois for not providing equal access to its common law of defamation. Straw v. Illinois, 1:17-cv-06231 (N.D. Ill.)

Just how a letter written to Straw by lawyer Kloecker in the course of his representation of Paddock in defending against Straw's state court lawsuit can amount to retaliation in violation of the ADA is wholly unexplained, as is Straw's claim of $740,000 in compensatory damages for that asserted violation.[4] To put the matter in the terms mandated by the Supreme Court as

---

[4] Note as well that Straw's typical reaction to any opposition to his version of law, however dubious it may be, appears to call for suing the person or entity that has crossed him, whether by challenging the State of Illinois in the above quotation or challenging this Court, as the later text will explain.

needed to provide a ticket of entry to the federal courts (the doctrine that this Court has labeled the "Twombly-Iqbal canon" for convenience), Straw's attempted new approach simply lacks the requisite "plausibility."

But in any event, within a few days after September 21 Straw was well aware both (1) that on September 20 this Court had ruled adversely on his outre contention that just one letter written by Kloecker and his law firm in the course of representing Paddock in defending it against Straw's lawsuit somehow ran afoul of the ADA's provisions and (2) that on September 21 the Executive Committee had confirmed that the assignment of this closed case to Judge Shah had been "due to a clerical error" and was therefore vacated, with the case being returned to this Court "for all further proceedings." Yet, just as Straw has elected to sue the State of Illinois for what he regards as its failure to follow the law, on September 26 he filed a "Verified Motion To Vacate" (the "Sept. 26 Motion," Dkt. No. 37) that repeatedly -- and falsely -- demeans this Court as "a non-judge," as "no longer a judge," as "not a judge," as not "a real judge" and again as "no longer a judge," and the list goes on. And to cap it off, Straw concluded his Sept. 26 Motion by characterizing those statements as "true and correct after reasonable investigation of the facts" -- to be blunt, an arrant falsehood.

Not content with launching that unsustainable attack, on the same September 26 date Straw filed a Complaint against this Court before the Seventh Circuit's Judicial Council, asserting the same false charges and worse. This opinion, already overlong from this Court's perspective (but necessarily so if it has to go on to describe the further distortions voiced in the September 26 papers tendered by Straw, who appears to have left the rails of reason), would normally have concluded with a description of those September 26 offenses. But just as what

has heretofore been dictated by this Court and transcribed by its able judicial assistant was ready for issuance, the ECF entries most recently revealed by this Court's iPhone have disclosed even newer and even more egregious offenses by Straw, to which brief reference must be made before closing.

One of the two most recent submissions by Straw is his September 28 "Verified Second Amended Complaint" (the "Proposed SAC," Dkt. No. 38), which has gone far beyond Straw's earlier improprieties by adding this Court as a third targeted defendant in addition to Kloecker and his law firm. And that effort is directly linked to Straw's contemporaneously filed "Affidavit To Support Recusal Under 28 U.S.C. §144" (the "Recusal Motion," Dkt. No. 39).

No useful purpose would be served by addressing the Proposed SAC separately: It primarily renews Straw's baseless scurrilous charges against this Court, this time as a purported predicate for asserting liability on the part of this Court; its purported substantive claim against Kloecker and his law firm cannot be advanced because of the flaw already identified in the discussion of the Sept. 11 Motion and the fact that this action has been dismissed and that the dismissal still remains in effect; and moreover, it would obviously be inappropriate for this Court to file some sort of responsive pleading to a not-yet-allowed complaint. But by contrast, an analysis of the Recusal Motion appears to be very much in order, and this opinion now turns to that subject.

That Motion begins (again) by falsely labeling this Court as a "former judge," as "retired on September 1," as "NOT A JUDGE" (all in capital letters), as "NOT MY PRESIDING JUDGE" (again all in capital letters), and as "<u>NOT</u> <u>MY</u> <u>JUDGE</u>" (this time in capital letters <u>and</u> underlined). Straw then points to what he describes as this Court's "former law firm

employer" -- now the firm of Miller, Shakman, & Beem -- and contends that the firm's representation of Kloecker and his law firm before the Court of Appeals on Straw's pending appeal in a <u>Straw v. Village of Streamwood</u> case should have led to this consequence when Straw sought to tender an amended complaint in this case (see Dkt. No. 39):

1. When I appealed Judge Shadur's decision to the 7th Circuit in 2014, his former law firm employer (Miller, Shakman, & Beem) represented my appellees. Now that the case has returned and I have an amended complaint, Shadur should have recused himself automatically for being so connected to the defendants. But he did not recuse.

2. This is exactly the reason why hiring Miller, Shakman, & Beem was unethical. It presented the possibility, now fact, of the defendants being so connected to the trial judge.

Connected? What Straw has sought to do here blithely disregards the facts that this Court left its practice with that law firm 37 years ago, that the law firm was not in this case when this Court dismissed Straw's original RICO complaint and that this Court knows nothing whatever about Straw's pending appeal to our Court of Appeals in a case entitled <u>Straw v. Village of Streamwood</u> except for Straw's sporadic reference to that case name and number before the Seventh Circuit in the course of his filings in this case.[5] Although this Court is always loath to invade the jurisdictional province of other professions (in this instance the realm of the psychiatric profession), here Straw's assertions can only be described as totally irrational.[6]

---

[5] And of course this Court has never had <u>any</u> communication, either oral or written, with any member of that law firm either about Straw or about that litigation.

[6] This opinion's earlier characterization of Straw's attempted shift from civil RICO to the ADA's provisions as lacking in the requisite <u>Twombly</u>-<u>Iqbal</u> canon "plausibility" applies here in spades.

**Conclusion**

At the very outset of this opinion, drafted in this instance well before Straw's appalling submissions descended to the depths manifested by his now-week-old September 28 offerings, this Court stated its intention to "leave the determination of any appropriate sanctions for Straw's misconduct to others who have had occasion to deal with him on more than one occasion (perhaps the Executive Committee of this District Court), as this Court has not." To review the bidding, Straw's lawsuit in this District Court remains dismissed under this Court's September 20 memorandum order, issued before Straw's most recent depredations. That minute order is succinctly encapsulated in this entry of the same date (Dkt. No. 34):

> MEMORANDUM Order: For the reasons stated in this memorandum order, plaintiff's motion for permission to amend and to request the case be reopened [Dkt. No. 32] is denied. This action remains dismissed. Signed by the Honorable Milton I. Shadur on 9/20/2017.

That being so, Straw has not been granted leave to file his vitriolic attacks embodied in his September 26 and September 28 papers. So to carry out this opinion's originally stated intentions, copies of this opinion are being transmitted to a number of distributees for their consideration of possibly appropriate action within their respective provinces: to this District Court's Executive Committee; to the Illinois ARDC (pursuant to the responsibility of every member of the Illinois bar who becomes aware of misconduct on the part of another Illinois lawyer, as taught by former Illinois Supreme Court Justice John Stamos); to the United States Attorney's Office (for its consideration as to possible action to address Straw's potential

responsibility for perjury, as referred to earlier in this opinion); and to our Court of Appeals, for its possible consideration in connection with Straw's filing of a complaint against this Court.

                                                                                          _____
                                                                                          Milton I. Shadur
                                                                                          Senior United States District Judge

Dated: October 4, 2017

## Appendix

As stated in the text, when this Court acted on the Sept. 11 Motion it was totally unaware of the clerical error that had placed this already-closed case on Judge Shah's calendar by random assignment. That mistaken assignment, however, was swiftly reversed -- a reversal that Straw learned about quickly, <u>before</u> he engaged in the unprofessional activity described in the opinion's text that follows its n.3 reference to this Appendix. To make clear the clerical error in that respect, what follows here is an explanation of the mistaken and short-lived injection of that purported "reassignment," a clerical error that even a brief inquiry by Straw (something that he did not undertake at all) would have revealed to have been inappropriate.

Whenever a member of this District Court leaves the court permanently, through death or by a voluntary total departure, his or her case calendar is redistributed to the judge's colleagues by a computer-driven pro rata random assignment system. If thereafter a previously dismissed action becomes a subject appropriate for further consideration (say through a motion to reconsider an earlier dismissal order), the judge who issued the order of dismissal but has since left the court entirely is no longer available to deal with the motion to reconsider -- instead that motion would have to be resolved by a judge with no prior experience with the case. So a further reassignment order has to be entered, for disposed-of cases were obviously not part of the case packages that have initially gone to the remaining District Judges.

By sharp contrast, this Court's decision to terminate its involvement in cases that had constituted the bulk (but not all) of the full active caseload that it had maintained for 37 uninterrupted years (the last 22 as a senior judge) was a necessary response to a combination of factors: the sudden onset of what several tests quickly revealed to be severe spinal stenosis, requiring major surgery on June 8 of this year, followed by a prolonged (and still continuing)

course of physical therapy, the regrettably slow pace of which made it impossible for this Court to meet the needs of its two constituencies (lawyers and their clients) for the ongoing day-to-day conduct and maintenance of ongoing matters -- status hearings, motions, issuance of memorandum orders and opinions and trials.  Thus the largest part of the cases pending on this Court's calendar was reassigned to its colleagues, just as would have been true in the more usual case of a total departure from the District Court.

In this Court's unusual situation, in which it retained a substantial number of cases as to which it had continuing responsibility for appropriate reasons, the reassignment of the principal part of its calendar took the form of an August 28 order of the Executive Committee that was accompanied by a listing of the pending cases that were properly reassigned to each of this Court's colleagues.  That listing did not (of course) refer to any then-previously-dismissed cases (such as Straw's), nor did it include (again of course) the group of pending cases over which this Court had retained jurisdiction for appropriate reasons.  Unfortunately the Executive Committee order entered on August 28 of this year began with the normal locution descriptive of a total departure from the District Court ("It appearing that the Honorable Milton I. Shadur has elected to retire as of September 1, 2017"), which in this Court's situation was an inaccurate description, for this Court had not and has not "retired" fully -- and in this particular instance, this Court was and is the only judge with the background enabling it to play with a full deck in dealing with a new motion to reinstate or to reconsider Straw's lawsuit.

It was for that reason that the Executive Committee, as soon as the situation described here became clear, swiftly (1) vacated as a "clerical error" the separate order, which had been issued on September 13, that mistakenly assigned Straw's Motion to Judge Shah and (2) thus

restored this Court's brief September 20 memorandum order (Dkt. No. 34) that had concluded in this fashion:

> In sum, Straw's attempt at a total do-over of his original claim is denied. This action remains dismissed.

That then is the final and conclusive word on both Straw's Sept. 11 Motion and his Sept. 26 Motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ANDREW U. D. STRAW**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 1420 |
| | ) | |
| **JOHN F. KLOECKER**, and | ) | |
| **LOCKE LORD LLP**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Last week (on July 27) Andrew U. D. Straw ("Straw") filed a self-prepared "Verified Motion to Reconsider Order Denying Motion To Strike," (the "Motion," Dkt. No. 30) that asked this Court "to Strike its contention that [this] case was frivolous." But that request is without merit, for this Court has gone back to look (1) at the context in which it indeed labeled as "frivolous" Straw's totally ill-conceived and bizarre effort to invoke civil RICO to collect from his targeted defendants -- attorney John Kloecker ("Kloecker") and the latter's law firm Locke Lord LLP -- $15 million in damages and (2) at our Court of Appeals' opinion affirming this Court.

To begin, here are three relevant excerpts from this Court's March 5, 2014 memorandum opinion and order (Dkt. No. 8), the first two from pages 2 and 3 of that opinion and the last from its final paragraph:

> It might have been expected that a lawyer such as Straw would have looked into the requirements of civil RICO before shooting from the hip as he has done in his Complaint, filed as it was less than two weeks after he received the Letter.[1] For

---

[1] [Footnote by this Court] "Letter" refers to a February 13, 2014 letter transmitted by attorney Kloecker to Straw dealing with the latter's lawsuit against a client of Kloecker's.

Ex. 1

example, some notion of the lack of thought and analysis that have gone into the Complaint can be gleaned from Straw's bizarre prayer for relief set out in Complaint ¶ 25.

*   *   *

More to the point from a substantive point of view, although Complaint ¶ 1 refers to "racketeering activity" on the part of the defendants coupled with generic references to 18 U.S.C. § 1962(a-d) in Complaint ¶¶ 3 and 4, it is painfully obvious from those blunderbuss citations that he has not bothered to read through what each of those separate subsections require.

*   *   *

In sum, Straw's effort to bootstrap the Letter into a criminal violation through which he hopes to mulct $15 million from Kloecker and Locke Lord must be characterized as legally frivolous in the sense employed in Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000). And the analysis there supports the denial of in forma pauperis treatment and the dismissal of this action by this District Court (see id. at 1027). This Court so orders.

Then, after this Court issued a March 26, 2014 memorandum order (Dkt. No. 11) rejecting Straw's motion for reconsideration of that opinion, Straw took an appeal from the dismissal -- and our Court of Appeals gave Straw short shrift in a three-page order, a "nonprecedential disposition." After recapping the background of Straw's action against attorney Kloecker and his law firm, the Court of Appeals' order stated in part:

> The district court concluded that Straw's racketeering claim is frivolous and that the letter he received from Locke Lord was "a legitimate inquiry" concerning the state lawsuit. Opining that Straw misconceives how civil RICO works and is attempting to "bootstrap" the firm's letter into a criminal violation, the court dismissed the federal suit and denied Straw's motion to reconsider.

And here is the conclusion of the Court of Appeals' order:

> We agree with the district court that Straw's lawsuit under RICO is frivolous, as is this appeal. Accordingly, we AFFIRM the judgment and order Straw to SHOW CAUSE within 30 days why he should not be sanctioned under Fed. R. App. P. 38 for taking this appeal. We also DENY Straw's motion to disqualify Miller, Shakman & Beem LLP as attorneys for the appellees in this case.

- 2 -

In short, Straw's current Motion is indeed plainly lacking in merit.  It is denied.

_____
Milton I. Shadur
Senior United States District Judge

Dated:  August 4, 2017

Honorable Milton I. Shadur

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# ORDER OF THE EXECUTIVE COMMITTEE

IT APPEARING THAT, due to a clerical error, case 14cv1420 was assigned in error on September 13, 2017 [33] to the Honorable Manish S. Shah, therefore

IT IS HEREBY ORDERED that the assignment of 14cv1420 to the Honorable Manish S. Shah be vacated as the assigned judge and the case shall be reassigned directly Honorable Milton I. Shadur.

ENTER:
FOR THE EXECUTIVE COMMITTEE

_____
Chief Judge Rubén Castillo

Dated at Chicago, Illinois this 21st day of September, 2017.

Ex. 2